**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

VANDA PHARMACEUTICALS INC.,

                  Plaintiff,

v.

FOOD AND DRUG ADMINISTRATION et al.,

                  Defendants.

No. 1:23-cv-02812-CRC

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO
COMPLETE AND SUPPLEMENT THE ADMINISTRATIVE RECORD**

Paul W. Hughes (D.C. Bar No. 997235)
Sarah P. Hogarth (D.C. Bar No. 1033884)
MCDERMOTT WILL & EMERY LLP
500 North Capitol Street NW
Washington, DC 20001
(202) 756-8000
phughes@mwe.com

*Attorneys for Plaintiff
Vanda Pharmaceuticals Inc.*

**TABLE OF CONTENTS**

Introduction.................................................................................................................................1

Background................................................................................................................................3

Argument ..................................................................................................................................5

    A.    The Court should complete or supplement the record with FDA's
        review of pharmacokinetic and dissolution data from Vanda's and
        Apotex's clinical studies. ..............................................................................5

    B.    The Court should supplement the record with Dr. Taft's declaration...........................8

Conclusion ...............................................................................................................................10

# TABLE OF AUTHORITIES[*]

**Cases**

*Am. Wildlands v. Norton*,
2006 WL 2780702 (D.D.C. Sept. 21, 2006) ..................................................................10

*Beyond Nuclear v. Dep't of Energy*,
233 F. Supp. 3d 40 (D.D.C. 2017)..................................................................................9

*City of Dania Beach v. FAA*,
628 F.3d 581 (D.C. Cir. 2010)...........................................................................5, 6, 7, 8

*Fund for Animals v. Williams*,
391 F. Supp. 2d 191 (D.D.C. 2005)................................................................................7

*Kent Cnty., DE Levy Ct. v. EPA*,
963 F.2d 391 (D.C. Cir. 1992)........................................................................................8

*Midcoast Fishermen's Ass'n v. Gutierrez*,
592 F. Supp. 2d 40 (D.D.C. 2008)..................................................................................8

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983)..........................................................................................................7

*Oceana, Inc. v. Ross*,
290 F. Supp. 3d 73 (D.D.C. 2018)..................................................................................5

*Oceana, Inc. v. Ross*,
454 F. Supp. 3d 62 (D.D.C. 2020) (Cooper, J.)..............................................5, 7, 8, 9

*Stainback v. Winter*,
520 F. Supp. 2d 181 (2007) ............................................................................................3

*Sw. Ctr. for Bio. Diversity v. Babbitt*,
131 F. Supp. 2d 1 (D.D.C. 2001)................................................................................7, 8

*U.S. Aid Funds., Inc. v. Devos*,
237 F. Supp. 3d 1 (D.C. Cir. 2017)................................................................................7

**Statutes**

5 U.S.C. § 706..................................................................................................................3, 5

21 U.S.C.
§ 355(j)(2)(iv) ..............................................................................................................6
§ 355(j)(8)(B)...............................................................................................................6

**Other Authorities**

Katherine Eban, *Bottle of Lies: The Inside Story of the Generic Drug Boom*
(2019)...............................................................................................................................1

Letter from FDA to Malvinder Singh, Ranbaxy Labs. Ltd. (Feb. 25, 2009)...................1

Rob Garver & Charles Seife, ProPublica, *FDA Let Drugs Approved on
Fraudulent Research Stay on the Market* (Apr. 15, 2013) ............................................1

33 Wright & Miller, Federal Practice & Procedure § 8391 (2d ed. 1987) ......................7

---

[*]    Authorities marked with an asterisk are those on which we chiefly rely.

**INTRODUCTION**

When addressing an abbreviated new drug application proposed by a generic manufacturer, the Food and Drug Administration's (FDA) most central task is to evaluate the bioequivalence data supplied by the generic applicant. To conduct the required bioequivalence testing, a generic manufacturer tests a sample of the reference listed drug—that is, the original branded drug (here, Hetlioz®) and tests its own product to determine if the dissolution profile of its product is substantially similar to the reference listed drug and if it performs in a bioequivalent manner in test subjects.

For more than a decade, FDA has been on notice of a troubling, well-documented pattern of generic manufacturers engaging in fraud with their bioequivalence testing—and FDA has repeatedly failed to identify this fraud. *See, e.g.*, Letter from FDA to Malvinder Singh, Ranbaxy Labs. Ltd. 5 (Feb. 25, 2009), https://www.fda.gov/media/74752/download; Rob Garver & Charles Seife, ProPublica, *FDA Let Drugs Approved on Fraudulent Research Stay on the Market* (Apr. 15, 2013), perma.cc/62YB-HN6D?type=image; Katherine Eban*, Bottle of Lies: The Inside Story of the Generic Drug Boom* (2019). This includes fraud by the very laboratory (Vimta Laboratories) that conducted the bioequivalence testing at issue here.

In this case, Vanda challenges FDA's approval of MSN Pharmaceuticals Inc.'s abbreviated new drug application for tasimelteon. One central part of MSN's application is its testing of a sample of the reference listed drug, Vanda's branded Hetlioz®. That is, MSN used Vanda's own drug in test subjects, measured certain results, and reported the information to FDA to purportedly show bioequivalence. When FDA evaluated this information, FDA had in its possession highly relevant, related data: Vanda's *own* bioequivalence testing of Hetlioz®, and, separately, another generic manufacturer's (Apotex's) bioequivalence testing of Hetlioz® in connection with its generic application. Vanda contends, among other reasons, that MSN's testing data is wildly

disparate from that obtained by Vanda and Apotex.[1] To substantiate this argument, Vanda relies on FDA's own written evaluations of both Vanda's underlying new drug application for Hetlioz® and Apotex's abbreviated new drug application for its generic copy. Vanda argues that FDA erred in approving MSN's application without any further inquiry to determine why MSN's testing data diverges so starkly from the results Vanda and Apotex obtained.

After receiving the administrative record in this case, however, Vanda discovered that FDA has excluded FDA's own written analysis of the testing data of Hetlioz® that Vanda and Apotex submitted to the agency. That is, three different companies—Vanda, Apotex, and MSN—ran dissolution and pharmacokinetic tests on Hetlioz®. FDA possessed this data from all three companies and produced its own reports analyzing the data obtained by these other companies regarding the dissolution profile of Hetlioz® and its pharmacokinetics. Yet FDA now takes the position that it never so much as considered its own written reports regarding the test results that Vanda and Apotex supplied to FDA in connection with the MSN approval, and, moreover, that these FDA records are not even in the administrative record of this case.

In Vanda's co-pending motion for summary judgment, Vanda will demonstrate that FDA's failure to consider its own internal records regarding testing results supplied by Vanda and Apotex necessarily resulted in an arbitrary and capricious decision. Indeed, had FDA reviewed that data, it would have raised very substantial questions—either MSN's process was grossly deficient as a technical matter, or it was downright fraudulent. But, as FDA now asserts, FDA did not so much as consider this highly relevant data it possessed.

This motion asks the Court to correct or supplement the administrative record by including documents in FDA's possession at the time of its decision, which bear immediately and directly on the question that FDA faced. Indeed, the two documents at issue were drafted *by FDA*, prior to its decision in this case. Additionally, Vanda asks that the Court supplement the administrative

---

[1]    Notably, the data that Vanda and Apotex independently obtained is quite similar.

record with a declaration from Dr. Taft that describes the importance and relevance of these substantial omissions in FDA's review of MSN's ANDA.

Defendants have informed us that they oppose the relief sought in this motion.

## BACKGROUND

Vanda contends in this case that FDA's acceptance of MSN's bioequivalence study and the resulting approval of MSN's ANDA for generic tasimelteon was arbitrary and capricious and contrary to the requirements of the FDCA, all in violation of the APA. *See* 5 U.S.C. § 706.[2]

One of Vanda's arguments is that FDA failed to consider critical pharmacokinetic and dissolution testing discrepancies, which undermine MSN's bioequivalence study results. *See* Mot. Summ. J. 20-24. In particular, MSN's bioequivalence study purportedly testing "Hetlioz®" produced pharmacokinetic results more than *double* the mean values that FDA observed in Vanda's own Phase 1 clinical studies and roughly double the mean values that FDA observed for the *very same lot* of Hetlioz® (Lot No. 3140788) that another generic manufacturer (Apotex) tested in its bioequivalence study. Ex. 3, Taft Decl. ¶¶ 77-78 (*comparing* AR8508-8511 (MSN BE Review), *with* Ex. 1, Hetlioz® Clin. Pharm. & Biopharm. Review(s) 16–17, *with* Ex. 2, Apotex BE Review 17).

MSN's study results, when compared against highly relevant data in FDA's possession, indicate either that MSN's reference product was not Vanda's Hetlioz® at all or that MSN's study was infected by systematic error. Ex. 3, Taft Decl. ¶¶ 17, 77-80, 81-98. Yet, as shown by failing to include its reviews of Vanda's NDA and Apotex's ANDA in the administrative record, FDA is apparently admitting that it did not so much as *consider* the data it had in its files revealing these discrepancies. *See Stainback v. Winter*, 520 F. Supp. 2d 181, 185 (2007) ("The 'whole' administrative record … consists of all documents and materials directly or indirectly *considered* by

---

[2]   Vanda assumes the Court's familiarity with and incorporates by reference the complete factual and procedural history in this matter from the summary judgment motion also filed today.

agency decision-makers[.]" (emphasis added)). FDA certainly did not rationally explain why this material did not affect its conclusion that MSN adequately showed bioequivalence.

The Court cannot meaningfully assess Vanda's argument that FDA failed to consider an important aspect of the problem and failed to consider material evidence adverse to its approval position because of FDA's exclusion of this information from the administrative record. Vanda therefore moves to complete or supplement the administrative record to include:

- FDA's own Clinical Pharmacology and Biopharmaceutics Review for Hetlioz®—and specifically the pharmacokinetic results that FDA observed for Hetlioz® from Vanda's Phase 1 clinical studies (Ex. 1, FDA, *Appl. No.: 205677Orig1s000 Clinical Pharmacology and Biopharmaceutics Review(s)* (Dec. 4, 2013), perma.cc/KP2L-NFXC (Hetlioz® Clin. Pharm. & Biopharm. Review(s)); and

- FDA's own bioequivalence review for Apotex's ANDA No. 211607—and specifically evidence of the pharmacokinetic results for Hetlioz® Lot No. 3140788 (the very same lot MSN tested) from Apotex's bioequivalence testing (Ex. 2, Biopharmaceutics Review for ANDA No. 211607 (May 2, 2018)).

These reviews are FDA-generated analyses that include (1) data that Vanda submitted about Hetlioz® for which FDA completed a written review on December 4, 2013, and (2) data that Apotex submitted about Hetlioz® for which FDA completed a written review on May 2, 2018. These reviews thus predate the decision in this case—for which a review was completed on June 8, 2018 (*see* ECF No. 21, AR139), and the final decision was rendered January 12, 2023 (AR8618-8624).

Vanda also moves to supplement the administrative record to include:

- Expert analysis by Dr. David R. Taft, identifying these data discrepancies and providing essential background information explaining the implications and consequences of FDA's oversight (Ex. 3, Declaration of Dr. David R. Taft).

4

**ARGUMENT**

While APA review generally proceeds on the record before the agency (5 U.S.C. § 706), a party may "add evidence or documents to the administrative record" in two scenarios: where evidence "should have been properly a part of the administrative record but was excluded by the agency" (completion) or where "extra-judicial evidence that was not initially before the agency … should nonetheless be included in the administrative record" (supplementation). *Oceana, Inc. v. Ross*, 454 F. Supp. 3d 62, 68 (D.D.C. 2020) (Cooper, J.).

Supplementing the record is warranted "(1) if the agency deliberately or negligently excluded documents that may have been adverse to its decision, (2) if background information [is] needed to determine whether the agency considered all the relevant factors, or (3) if the agency failed to explain administrative action so as to frustrate judicial review." *City of Dania Beach v. FAA*, 628 F.3d 581, 590 (D.C. Cir. 2010).

Two documents that Vanda asks the Court to consider—FDA's own review of Vanda's Hetlioz's® data and Apotex's data—were in fact "before the agency at the time the decision was made" (*Oceana, Inc. v. Ross*, 290 F. Supp. 3d 73, 78 (D.D.C. 2018) (Cooper, J.)), but FDA seems to have simply failed to consider them. And the third—Dr. Taft's declaration—explains the significance of this information to the agency's review of MSN's ANDA and highlights the serious gaps in the agency's failure to consider whether MSN's bioequivalence data was reliable at *all*. This limited evidence easily clears the bar for supplementing the administrative record.

A. **The Court should complete or supplement the record with FDA's review of pharmacokinetic and dissolution data from Vanda's and Apotex's clinical studies.**

The Court should complete or supplement the administrative record with Vanda's exhibits 1 and 2, which reflect FDA's own review of pharmacokinetic and dissolution data from Vanda's phase I clinical study and Apotex's bioequivalence study. These exhibits—which are FDA-generated and predate the challenged approval of MSN's ANDA—contain data showing Hetlioz®'s

5

pharmacokinetic properties, including how it was shown to be absorbed by patients during trials and how the drug dissolved in laboratory testing. These documents show that FDA possessed data about the properties of Hetlioz®—both from Vanda, as the sponsor of Hetlioz®, the referenced listed drug, as well as Apotex, a competing generic manufacturer—at the time it reviewed and at the time it approved MSN's ANDA. This evidence thus reveals that FDA had before it, but failed to consider, evidence that would have revealed to FDA gross discrepancies in MSN's pharmacokinetic data, precluding a finding of bioequivalence.

This evidence (and FDA's failure to designate it as part of the administrative record) demonstrates that FDA entirely failed to consider an important aspect of the regulatory problem before it. It demonstrates that MSN's bioequivalence study was either systematically unreliable or even fraudulent, contradicting FDA's finding that MSN "show[ed]" that its "new drug is bioequivalent to the listed drug." 21 U.S.C. § 355(j)(2)(iv). Yet FDA apparently did not even consider that grossly disparate pharmacokinetic results of "Hetlioz®" testing in MSN's bioequivalence study—*double* the mean values from Vanda's Phase I clinical trials and Apotex's bioequivalence study—demonstrate that MSN's study results were deeply flawed if not fabricated. Nor did FDA consider how MSN could satisfy its obligation to show that "the rate and extent of absorption of [its] drug" are not "significant[ly] differen[t] from the rate and extent of absorption of the listed drug" (21 U.S.C. § 355(j)(8)(B)), when its results are so widely divergent from the FDA's own analysis of the rate and extent of absorption of Hetlioz® *and* another ANDA applicant's results for the same lot of Hetlioz®.

This evidence warrants supplementing the record under either the first or second *City of Dania Beach* factor.

*First*, this data is "background information … needed to determine whether the agency considered all the relevant factors." *City of Dania Beach*, 628 F.3d at 590. "The 'relevant factors' ground for supplementation comes into play where a party seeks to demonstrate that an agency

decision was arbitrary because the agency did not consider some important aspect of the regulatory problem before it." *Oceana, Inc.*, 454 F. Supp. 3d at 69 (quoting 33 Wright & Miller, Federal Practice & Procedure § 8391 (2d ed. 1987)). That is, courts may consider extra-record evidence "to ascertain *whether* the agency considered all factors relevant to its decision." *Id.* (quoting *Sw. Ctr. for Bio. Diversity v. Babbitt*, 131 F. Supp. 2d 1, 7 (D.D.C. 2001)). This authorization allows parties to effectively leverage all available arbitrariness arguments, including when an agency "entirely fail[s] to consider an important aspect of the problem" by neglecting evidence suggesting a problem exists in the first place. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

Here, "[t]he administrative record, as it stands, is completely 'silent' as to *whether* the agency considered" the reliability of MSN's data in light of information FDA possessed about the reference listed drug. *Oceana, Inc.*, 454 F. Supp. 3d at 72 (quoting *U.S. Aid Funds., Inc. v. Devos*, 237 F. Supp. 3d 1, 5 (D.C. Cir. 2017)). This information is especially important when faced with the "scientific analysis" of generic drug approval, where the agency's failure to consider an "intermediary evidentiary factor[]"—like whether MSN's pharmacokinetic and dissolution data for its purported Hetlioz® sample reliably reported the study results supporting FDA's bioequivalence finding—might alone be grounds to vacate the agency action. *See id.* at 70.

*Second*, the evidence Vanda seeks to admit to the record undoubtedly would "have been adverse to [FDA's] decision." *City of Dania Beach*, 628 F.3d at 590. FDA was thus obligated to consider this data as part of its review of MSN's ANDA and then include it in the administrative record. *Id*. After all, FDA "may not … skew the 'record' for review in its favor by excluding from that 'record' information in its own files which has great pertinence to the proceeding in question." *Fund for Animals v. Williams*, 391 F. Supp. 2d 191, 199 (D.D.C. 2005). That is this evidence. FDA had before it the known dissolution profile of Hetlioz® and the dissolution profile of the same lot of Hetlioz®. This evidence would have been adverse to FDA's bioequivalence finding for MSN—

7

and FDA was at *least* negligent in failing to consider whether MSN's data was reliable by checking readily accessible information about the reference listed drug. The Court should admit the documents under this *City of Dania Beach* factor as well.

FDA may respond that its analysis was properly confined to the information MSN submitted, and it was under no obligation to consider the clinical data from other trials to decide whether MSN made the requisite bioequivalence showing under the FDCA. That argument would be wrong. *Kent Cnty., DE Levy Ct. v. EPA*, 963 F.2d 391, 396 (D.C. Cir. 1992) (supplementing the record with documents that "relate[d] to the position of the agency's own experts on the question central to [the] case" that "it would have found" had the agency "simply checked the files" most relevant to the issue); *see also Midcoast Fishermen's Ass'n v. Gutierrez*, 592 F. Supp. 2d 40, 45 (D.D.C. 2008) (supplementing the record is appropriate "where the agency blatantly ignored a specific document that was readily available and directly on point"). But for purposes of *this* motion, that is beside the point. The Court's object here is to decide whether, without supplementing the record with FDA's review of Vanda's and Apotex's dissolution data, the Court can even assess "*whether* the agency considered all factors relevant to its decision." *Oceana, Inc.*, 454 F. Supp. 3d at 69 (quoting *Sw. Ctr. for Bio. Diversity*, 131 F. Supp. 2d at 7). It cannot. To evaluate Vanda's argument, the Court must have before it the evidentiary factors Vanda claims the agency improperly disregarded—regardless of the view the Court ultimately takes on the merits. Given that the regulatory decision here turned on MSN's bioequivalence testing of Hetlioz®, the pharmacokinetic and dissolution testing by Vanda and Apotex was necessarily highly relevant to FDA's evaluation. Thus, supplementation with FDA's own review of Vanda's and Apotex's pharmacokinetic and dissolution data for Hetlioz® is warranted.

**B.     The Court should supplement the record with Dr. Taft's declaration.**

The Court should likewise allow Vanda to supplement the record with Dr. Taft's declaration. Much like the expert declaration this Court allowed to supplement the record in *Oceana, Inc.*,

Dr. Taft's declaration "points out … gaps in the agency's analysis and explains in detail why, in [his] view," the missing data reveals a critical factor bearing on FDA's ultimate decision on bioequivalence. 454 F. Supp. 3d at 72.

Dr. Taft compares MSN's bioequivalence review with Vanda's Phase I clinical results and Apotex's generic bioequivalence review. *See* Ex. 3, Taft Decl. ¶¶ 77-78. In so doing, he explains this data's relevance to the question whether MSN has shown bioequivalence, identifying the data discrepancies the FDA fatally overlooked and revealing the gap in the agency's analysis. *See id.* ¶¶ 52-111 (detailing these "significant" discrepancies and why they cannot be explained by random error). He explains that the pharmacokinetic data for the listed drug collected during a bioequivalence study should be the same or similar to existing pharmacokinetic data for the already-approved, reference listed drug. *See id.* ¶¶ 44, 49. But it was not. Dr. Taft's conclusions show precisely why this discrepancy represents an important aspect of the problem FDA faced: it calls into serious question whether MSN even used Vanda's Hetlioz® as the reference listed product for its study. *See id.* ¶¶ 19, 77-80, 112-115. And if MSN did use Vanda's Hetlioz®, the results reflect either a true difference in the absorption of the drug in the sampled populations *or* that MSN's bioequivalence study was conducted in a significantly flawed manner—or both. *See id.* ¶¶ 69, 76, 77, 79-80, 112-114. Either way, the study would not suffice to show the MSN generic product's bioequivalence to Hetlioz®. *See id.*

FDA may contend that Dr. Taft's declaration merely expresses a "conflicting view" on an issue FDA has already considered. *See Oceana, Inc.*, 454 F. Supp. 3d at 70-71. But that too would be wrong. Here, Dr. Taft's declaration "point[s] to materials [and] evidence that [Vanda] allege[s] [FDA] should have considered." *See Beyond Nuclear v. Dep't of Energy*, 233 F. Supp. 3d 40, 48 (D.D.C. 2017). FDA apparently did *not* consider, and thus did not offer *any* view on, the evidence it possessed showing that MSN's bioequivalence results were either fraudulent or the result of systemic error. Dr. Taft's opinions cannot conflict with agency judgment that does not exist. *Cf.*

9

*Am. Wildlands v. Norton*, 2006 WL 2780702, at *1 (D.D.C. Sept. 21, 2006) (only where expert evidence "discuss[es] issues … that were considered by the agency" is it inappropriate "to supplement the record"). Rather, while FDA's reviews of Vanda's and Apotex's data offer the Court substantive evidence of the factor Vanda claims FDA should have considered, Dr. Taft explains why that evidence was critically relevant to its decision. Thus, to evaluate Vanda's argument that FDA's action was arbitrary and capricious, it is essential for the Court to assess both the evidence that FDA possessed (but says it did not consider) as well as an explanation as to why FDA *should have* considered this information. Dr. Taft's declaration is a proper supplement to the administrative record.[3]

### CONCLUSION

The Court should supplement the administrative record with Vanda's exhibits 1, 2, and 3—the Hetlioz® Clinical Pharmacology & Biopharmaceutics Review(s), Apotex's bioequivalence review, and Dr. Taft's declaration—so that the Court is positioned to effectively review and evaluate each of Vanda's arguments in support of its motion for summary judgment.

---

[3]    Vanda has not included in this motion two separate issues relating to the administrative record that have been discussed among the parties.

First, the parties have agreed that the Court may consider FDA regulatory documents, such as putative "guidance" documents setting forth FDA policy. The parties will cite these materials in their briefs, and then provide a supplemental appendix to the Court for ease of reference. Vanda thus does not believe that the Court need take any action regarding these documents. If, however, the Court believes that these materials need to be formally included in the administrative record for consideration, then Vanda will respectfully request leave to complete the record with their inclusion.

Second, the parties are actively discussing whether FDA will release (subject to the protective order) redactions it has made in the confidential administrative record it provided to Vanda. Vanda is of the view that, when the agency acknowledges certain documents are in the administrative record, the *entire* document must be placed in the record—not just portions that an agency selectively chooses ex post. Because the parties continue to confer on this issue, Vanda is not moving on this issue at this time. If, however, the parties are unable to reach agreement, Vanda respectfully notes that it may further move to complete the record with this material.

Dated:  April 22, 2024

Respectfully submitted,

/s/ *Paul W. Hughes*
Paul W. Hughes (D.C. Bar No. 997235)
Sarah P. Hogarth (D.C. Bar No. 1033884)
MCDERMOTT WILL & EMERY LLP
500 North Capitol Street NW
Washington, DC 20001
(202) 756-8000
phughes@mwe.com

*Attorneys for Plaintiff*
*Vanda Pharmaceuticals Inc.*